UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SHAMARLON VILLAFANA,

                    Plaintiff,

-against-

THE CITY OF NEW YORK, DETECTIVE
DANIEL DAVIDOFF, P.O. JOSHUA E.
CROWLEY, SERGEANT DANA M.
MARTILLO, SERGEANT TITUS T.
PARHAM, and JOHN DOE AND JANE
DOE,

                    Defendants.

**MEMORANDUM AND ORDER**
Case No. 24-CV-7446 (FB) (JAM)

*Appearances:*

*For the Plaintiff:*
UGOCHUKWU UZOH
Ugo Uzoh, P.C.
Virginia & Ambinder, LLP
56 Willoughby Street
Third Floor
Brooklyn, New York 11201

*For the Defendants:*
MURIEL GOODE-TRUFANT
Corporation Counsel of the City of New
York
100 Church Street
New York, NY 10018

**BLOCK, Senior District Judge:**

Plaintiff Shamarlon Villafana brought this action to recover compensatory and punitive

damages pursuant to 42 U.S.C. § 1983 and New York state law against the City of New York

("City") and several New York Police Department ("NYPD") officers ("Defendant Officers" or

"Officers").

On February 25, 2022, the NYPD received a sworn domestic incident report from

Plaintiff's ex-boyfriend alleging that she had sent him several text messages threatening to have

him deported and murdered. Compl. ¶ 16, ECF No. 1; Gottstein Decl., Exs. A, B at 103, ECF

1

No. 32-1. One message said "[w]ait till u get deported." *Id*. In the others, Plaintiff wrote "[a] bullet in ya head once u touch down they waiting" and warned him that he had "[b]etter hide in that little one bed room [he is] in" because she would have people looking for him. *Id*. Based on the ex-boyfriend's report, the NYPD issued an investigation card ("ICARD") and subsequently arrested Plaintiff on March 3, 2022. Compl. ¶ 12.

Plaintiff alleges that the NYPD and its officers violated her rights by arresting her. She advances ten claims, nine against the Defendant Officers and one against the City. Her claims against the Defendant Officers include five § 1983 claims for false arrest, malicious prosecution, fabrication of evidence, and denial of her right to a fair trial; a claim under the New York State Constitution; and three state law tort claims. Lastly, she advances a *Monell* claim against the City for failure to train and supervise the officers. Plaintiff requests that the Court exercise supplement jurisdiction over her state law claims.

The Defendants' motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is currently before the Court. As explained below, the motion is GRANTED and the case is dismissed.

**Legal Standard**

When reviewing a Rule 12(c) motion for judgment on the pleadings, the Court may look to "the complaint, answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009).[1] A 12(c) motion is therefore only properly made after joinder of issue. Thus, it differs from a 12(b)(6) motion to dismiss for failure to state a claim, where the Court may only consider the complaint. But, as with a 12(b)(6) motion, the Court may also

---

[1] Throughout this opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

"consider extrinsic material that the complaint incorporates by reference [or] that is integral to the complaint." *Lively v. WAFRA Investment Advisory Group, Inc.*, 6 F.4th 293, 305 (2d Cir. 2021).[2]

Despite this distinction, a motion for judgment on the pleadings is subject to the same standard as a Rule 12(b)(6) motion for determining whether a complaint states a valid claim for relief. *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020). Thus, to survive a motion for judgment on the pleadings, a complaint must include "sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible if it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint does not meet this pleading standard if it merely states conclusory assertions, which the Court need not accept as true. *Watson Labs., Inc. v. Forest Labs. Inc.*, 101 F.4th 223, 235 (2d Cir. 2024). The Court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008).

In essence this means that a 12(c) motion is identical to a 12(b)(6) motion except the Court may consider the contents of the Answer. However, the Court may not rely on its factual assertions when weighing the plausibility of the allegations in the Complaint. *See Lively*, 6 F.4th at 304. The tight-rope act required to consider the Answer without giving it factual weight has

---

[2] Here, this means that the text messages Plaintiff sent her ex-boyfriend and the boyfriend's domestic incident report ("DIR"), Gottstein Decl., Exs. A, B, are incorporated by reference because they are integral to the Complaint. *See Kaplan v. Wings of Hope Residence*, No. 2:18-CV-2972, 2020 U.S. Dist. LEXIS 22374, at *10 (E.D.N.Y. Feb. 7, 2020) (text messages incorporated by reference because the complaint mentioned them); *Betts v. Shearman*, No. 12-CV-3195 (JPO), 2013 U.S. Dist. LEXIS 11139, at *9-10 (S.D.N.Y. Jan. 24, 2013) (domestic incident report signed by arresting officer was integral to complaint and implicitly incorporated in it), *aff'd*, 751 F.3d 78 (2d Cir. 2014);

led "[s]ome commentators [to] describe[] 'the Rule 12(c) motion [as] little more than a relic of the common law and code eras.'" *Id.* at 302 (*quoting* 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1369 (3d ed. 2021).

## I.    THE FEDERAL CLAIMS

Plaintiff brings five claims under 42 U.S.C. § 1983 against the Defendant Officers. To prevail on a § 1983 claim, a plaintiff must show that the Officers deprived her of rights secured "by the Constitution or laws of the United States" while acting under color of state law. *Palmieri v. Lynch*, 392 F.3d 73, 78 (2d Cir. 2004); *West v. Atkins*, 487 U.S. 42, 48 (1988). The Court addresses each claim in turn, succinctly explaining why they are dismissed.

<u>False Arrest</u>

To establish a claim for false arrest, Plaintiff must show that the Officers "intentionally confined [her] without [her] consent and without justification." *Escalara v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004). "Because probable cause to arrest constitutes justification, there can be no claim for false arrest where the arresting officer had probable cause to arrest the plaintiff." *Id.*.

Probable cause exists where an arresting officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). If law enforcement officers receive information from a purported victim, they have probable cause to arrest the named suspect, "unless the circumstances raise doubt as to the [purported victim's] veracity." *Betts v. Shearman*, 751 F.3d 78, 83 (2d Cir. 2014). Absent a clear indication that the information was fabricated, officers may reasonably assume the truth of the purported victim's accusation. *United States v. Manley*, 632 F.2d 978, 984 (2d Cir. 1980). A "thorough" or "probing" investigation into the facts

4

leading to an arrest is not required unless the officers have reason to doubt those facts. *Id*. Likewise, officers need not consider whether "subsequent prosecution of the arrestee" will succeed **to s**atisfy the probable cause standard. *Krause v. Bennett*, 887 F.2d 362, 372 (2d Cir. 1989).

Plaintiff texted her ex-boyfriend that she was going to have him deported and murdered. *See* Gottstein Decl., Ex. A. Accordingly, the ex-boyfriend filed a domestic incident report ("DIR") with the NYPD. In response to the text messages and the ex-boyfriend's DIR, the NYPD issued an Investigation Card ("ICARD"), which is an "internal NYPD form issued by an officer when there is a suspect, witness or perpetrator to be investigated." *United States v. Fleming*, No. 18-CR-197 (KAM), 2019 WL 486073, at fn. 1 (E.D.N.Y. Feb. 6, 2019). There are different kinds of ICARDs, depending on whether the NYPD wants to question someone or arrest them. *Id.* at *2 (explaining that "'probable cause' ICARDs signal that there is probable cause for a person's arrest, whereas 'suspect only' ICARDs show that the subject of the ICARDs is a person of interest"). Here it is clear that the ICARD was issued for probable cause, because the Defendant Officers contacted Plaintiff and told her that she was under arrest and should turn herself in. Compl. ¶ 13.

Malicious Prosecution

To prevail on a malicious prosecution claim, a plaintiff must show: "(i) the commencement or continuation of a criminal proceeding against her; (ii) the termination of the proceeding in her favor; (iii) that there was no probable cause for the proceeding; and (iv) that the proceeding was instituted with malice." *Mitchell v. City of New York*, 841 F.3d 72, 79 (2d Cir. 2016). Probable cause to arrest the Defendant bars her malicious prosecution claim.

Fabrication of Evidence and Denial of Right to a Fair Trial

5

Plaintiff claims that the Officers fabricated evidence by "falsely" telling the Kings County District Attorney's Office prosecutors that she "subjected her ex-boyfriend to physical contact or attempted or threatened to subject him to physical contact." Compl. ¶ 48. Contrary to this claim, the text messages clearly show that Plaintiff threatened her ex-boyfriend with violence. Gottstein Decl., Ex. A. Therefore, the Officers did not fabricate evidence.

To prevail on a § 1983 claim for denial of the right to a fair trial, a plaintiff must show that a law enforcement officer conveyed information to a prosecutor "based on [the officer's] fabrication of information," and that the alleged fabricated information "is the officer's own account of his or her observations of alleged criminal activity." *Barnes v. City of New York*, 68 F.4th 123, 129 (2d Cir. 2023). As with the Fabrication of Evidence claim, the record shows that the Defendant Officers conveyed only true information to the prosecutor. Consequently, Plaintiff's third cause of action is dismissed.

<u>Excessive Force</u>

Plaintiff alleges that the Officers used excessive force in handcuffing her during her arrest. Compl. ¶ 54. Excessive force claims are analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). "The reasonableness of [an] officer's belief as to the appropriate level of force should be judged from the on-scene perspective" of a reasonable officer in similar circumstances. *Saucier v. Katz*, 533 U.S. 194, 205 (2009).

The Supreme Court has long recognized that a law enforcement officer's right to make an arrest necessarily carries with it the right to use some degree of physical force. *Graham*, 490 U.S. at 396. This includes using handcuffs to effect an arrest. *Soares v. Connecticut*, 8 F.3d 917, 921 (2d Cir. 1993) ("handcuffing will be the reasonable course in many, if not most arrest

situations"). While there is no simple checklist to determine whether an officer's use of handcuffs was objectively reasonable, some factors to consider are "(1) the [arrestee's] handcuffs were unreasonably tight; (2) the defendants ignored the arrestee's pleas that the handcuffs were too tight; and (3) the degree of injury to the [arrestee's] wrists." *Cugini v. City of N.Y.*, 941 F.3d 604, 612 (2d Cir. 2019) (*citing Esmont v. City of N.Y.*, 371 F. Supp. 2d 202 (E.D.N.Y. 2005)).

Nowhere does Plaintiff claim that she told the Officers that the handcuffs were too tight, nor does she suggest that she suffered any injuries. The Complaint only asserts that Defendant Officers "tightly handcuffed [Plaintiff] causing [her] to experience pain and numbness." Compl. ¶ 17. "[T]here is a consensus among courts in this circuit that tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort. These injuries need not be severe or permanent, but must be more than merely *de minimis*." *Selvaggio v. Patterson*, 93 F. Supp. 3d 54, 74 (E.D.N.Y. 2015) (internal quotations omitted). Plaintiff does not suggest that her handcuffing resulted in anything worse than temporary pain and discomfort. The Complaint does not support an excessive force claim.

Failure to Intervene

Law enforcement officers have an affirmative duty to intervene on behalf of a citizen whose constitutional rights are being violated in their presence by another officer. *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988). Because the Court has concluded that the Complaint fails to state a claim that the officer who arrested Plaintiff violated her constitutional rights, her claim that another officer had a duty to intervene necessarily also fails.

Failure to Train/Supervise/Discipline/Screen and Municipal Policy

Plaintiff's *Monell* claim against the City is predicated on her allegations that the NYPD, violated her constitutional rights by failing to train, supervise, discipline, and screen its law enforcement officers. Compl. ¶ 63.

A plaintiff may assert a *Monell* claim under § 1983 when the execution of a municipality's policies or customs are the cause of a constitutional deprivation. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 (1978). *Monell* does not create a separate cause of action, rather it "extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006). "[A] plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007). Moreover, inadequate police training can serve as the basis for § 1983 liability only where the failure to train amounts to "deliberate indifference" to the rights of persons with whom the police come into contact. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989).

As Plaintiff fails to plead a constitutional violation, her *Monell* claim fails.

## II. THE STATE CLAIMS

Plaintiff's seventh through tenth causes of action are state law claims. The Supplemental Jurisdiction statute, 28 U.S.C. §1367, enables federal district courts to entertain state law claims when they are "so related to claims . . . within [federal jurisdiction] that they form part of the same case or controversy." §1367(a). However, a District Court may decline to exercise supplemental jurisdiction in its discretion where, as here, the district court has dismissed all claims over which it has original jurisdiction." § 1367(c)(3).

"Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional 'values of judicial economy, convenience, fairness, and comity,' [] in deciding whether to exercise jurisdiction." *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 119 (2d Cir. 2006) (*quoting Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988)). The Supreme Court has offered the additional guidance that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Cohill,* 484 U.S. at 350 n. 7. As this appears to be the most usual of cases, and none of the *Cohill* values warrant the exercise of supplemental jurisdiction, the Court declines to do so.

## CONCLUSION

Defendant's motion for judgment on the pleadings is GRANTED. As the Court declined to exercise supplemental jurisdiction over the state law claims, they are dismissed without prejudice.


**SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　　　　 /S/ Frederic Block　　　　　　
　　　　　　　　　　　　　　　　　　　　　　　　　FREDERIC BLOCK
　　　　　　　　　　　　　　　　　　　　　　　　　Senior United States District Judge

Brooklyn, New York
July 14, 2026